## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

In re:                                    )
                                          )
PARKWOOD HOSPITALITY, LLC,                )        Case No. 11-14863
                                          )        (Chapter 11)
                   Debtor.                )

---

## PARKWOOD HOSPITALITY, LLC'S
## PLAN OF REORGANIZATION

---

### PHILLIPS MURRAH P.C.

Robert J. Haupt, OBA No. 18940
Andrew R. Chilson, OBA No. 30040
Clayton D. Ketter, OBA No. 30611
Corporate Tower, Thirteenth Floor
101 North Robinson Avenue
Oklahoma City, Oklahoma 73102
405.235.4100 – telephone
405.235.4133 – facsimile
rjhaupt@phillipsmurrah.com
archilson@phillipsmurrah.com
cdketter@phillipsmurrah.com
ATTORNEYS FOR DEBTOR
PARKWOOD HOSPITALITY, LLC

**Dated: November 4, 2011.**

00594463.DOC                                                      24703.78001

# TABLE OF CONTENTS

I.      DEFINITIONS ............................................................................................... 2

II.     ADMINISTRATIVE EXPENSE AND PRIORITY TAX CLAIMS ...................... 7

III.    CLASSIFICATION OF CLAIMS AND INTERESTS ........................................... 10

IV.     TREATMENT OF CLASSES ............................................................................ 11

V.      MEANS OF IMPLEMENTATION OF THE PLAN ............................................... 16

VI.     DISTRIBUTIONS .......................................................................................... 19

VII.    EXECUTORY CONTRACTS AND LEASES ....................................................... 23

VIII.   EFFECT OF CONFIRMATION ........................................................................ 25

IX.     CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ................................. 28

X.      RETENTION OF JURISDICTION ................................................................... 30

XI.     MISCELLANEOUS ....................................................................................... 32

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

In re:                                  )
                                        )
PARKWOOD HOSPITALITY, LLC,              )          Case No. 11-14863
                                        )          (Chapter 11)
                    Debtor.             )

## PARKWOOD HOSPITALITY, LLC'S
## PLAN OF REORGANIZATION

Parkwood Hospitality, LLC (the "Debtor" or the "Reorganized Debtor," as applicable) proposes the following Chapter 11 Plan of Reorganization (the "Plan") pursuant to section 1121(a) of Title 11 of the United States Code (the "Bankruptcy Code").

Please refer to the Disclosure Statement for a discussion of the Debtor's history, business, property, results of operations, Chapter 11 case, projections for future operations, and risk factors, and for a summary and analysis of the Plan and certain related matters.   All holders of claims who are entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan.

This plan of reorganization is proposed by the Debtor, and was prepared by the Debtor's counsel, Phillips Murrah P.C.

## I.    DEFINITIONS

A term used in the Plan that is not defined in the Plan shall have the meaning assigned to that term in the Bankruptcy Code.  The following terms used herein shall have the respective meanings given below:

1.    <u>Administrative Expense</u>.  Shall mean any right to payment constituting a cost or expense of administration of the Case allowed under Bankruptcy Code sections 503(b) and 507(a)(2), including, without limitation: (i) any actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Debtor's Estate and operating the Debtor's business; (ii) any allowances of compensation and reimbursement of expenses to the extent Allowed by Final Order under Bankruptcy Code sections 328, 330, 331, or 503; and (iii) any fees or charges assessed against the Estate under section 1930 of Chapter 123 of Title 28 of the United States Code.

2.    <u>Allowed</u>.  Shall mean, with respect to Claims and Interests: (i) any Claim or Interest that has been listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent and for which no contrary proof of claim or interest has been timely filed; (ii) any Claim or Interest as to which a proof of claim or interest has been timely filed by the applicable Bar Date and as to which no objection to allowance has been timely interposed in accordance with the terms of this Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or other order of the Court or that the Debtor or Reorganized Debtor determines, in their sole capacity, not to object to; or (iii) any Claim or Interest expressly Allowed by this Plan.

3.     <u>Bar Date</u>: Shall mean the applicable bar date as set forth in the Order Granting Application for an Order Establishing the Time Within Which Proofs of Claims Must Be Filed, Including Claims Under Bankruptcy Code Section 503(b)(9), Establishing the Procedures for Filing, and Approving the Form of the Notice Thereof, Combined with Brief in Support [Doc. 56].

4.     <u>Bankruptcy Rules</u>:  Shall mean the Federal Rules of Bankruptcy Procedure.

5.     <u>Case</u>:  Shall mean the Chapter 11 bankruptcy case filed in the Court by Parkwood Hospitality, LLC on September 2, 2011.

6.     <u>Cash</u>:  Shall mean legal tender of the United States of America and equivalents thereof.

7.     <u>Claim</u>:  Shall have the same meaning it does under the Bankruptcy Code and shall include any and all liabilities arising from events or circumstances occurring before the Confirmation Date.

8.     <u>Claimant</u>:  Shall mean the holder of a Claim.

9.     <u>Class</u>:  Shall mean any group of Claims or Interests classified by the Plan pursuant to Bankruptcy Code section 1122(a)(1).

10.     <u>Collateral</u>:  Shall mean property of the Estate and property of the Debtor that secures an Allowed Secured Claim.  Collateral shall also mean property of the Estate and property of the Debtor that vests in the Reorganized Debtor on the Effective Date.

11.     Confirmation Date:  Shall mean the date the Confirmation Order is entered by the Court.

12.     Confirmation Order:  Shall mean the order of the Court confirming the Plan pursuant to Bankruptcy Code section 1129.

13.     Court:  Shall mean the United States Bankruptcy Court for the Western District of Oklahoma.

14.     Cure Payment:  Shall mean the payment of Cash and/or the distribution of other property (as the parties may agree or the Court may order), as necessary to cure defaults under an executory contract or unexpired lease of the Debtor and compensate the non-Debtor party to such executory contract or unexpired lease for any actual pecuniary loss to such party resulting from such defaults so that the Debtor in Possession may assume the contract or lease under Bankruptcy Code section 365(a).

15.     Debtor in Possession:  Shall mean Parkwood Hospitality, LLC, from and after the Petition Date.

16.     Deficiency Claim:  Shall mean the portion, if any, of the Claim of a holder of a Secured Claim that exceeds the value of the lien securing such Claim, including any lien on Collateral.

17.     Disclosure Statement:  Shall mean that certain disclosure document relating to the Plan, including, without limitation, all exhibits and schedules thereto, as the same

may be amended, supplemented, or otherwise modified from time to time as approved by the Court pursuant to Bankruptcy Code section 1125.

18.    <u>Disputed</u>:  Shall mean, with respect to Claims and Interests, a Claim or Interest, or any portion of a Claim or Interest, that is not yet Allowed.

19.    <u>Effective Date</u>:  Shall mean a day selected by the Debtor on which (i) no stay of the Confirmation Order is in effect and (ii) the conditions to the effectiveness of the Plan have been satisfied or waived.

20.    <u>Estate</u>:  Shall mean the estate created by Bankruptcy Code section 541.

21.    <u>Final Order</u>:  Shall mean an order or judgment of the Court entered by the clerk of the Court on the docket in the Case, which has not been reversed, vacated, or stayed and as to which: (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending; or (ii) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, or

any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause such order not to be a Final Order.

22.     Hotel:  Shall mean the Holiday Inn hotel located at 3400 Parkwood Blvd., Frisco, Texas 75034.

23.     Interest:  Shall mean the legal, equitable, contractual, and other rights of any holder of an ownership interest in the Debtor, represented by membership interests.

24.     Petition Date:  Shall mean September 2, 2011.

25.     Priority Claim:  Shall mean all Claims that are entitled to priority under Bankruptcy Code section 507.

26.     Priority Tax Claim:  Shall mean any Claim of a governmental unit of the kind entitled to priority in payment as specified in Bankruptcy Code sections 502(i) and 507(a)(8).

27.     Professional Fee Claim: Shall mean a Claim for compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under Bankruptcy Code sections 503(b)(2), 503(b)(3) (except under section 503(b)(3)(D)), 503(b)(4), or 503(b)(5).

28.     Proponents:  Shall mean the Debtor.

29.     Reorganized Debtor:  Shall mean Parkwood Hospitality, LLC, from and after the Effective Date.

30.   Schedules:  Shall mean the schedules of assets and liabilities filed in the Case and all amendments to the schedules of assets and liabilities filed in the Case.

31.   Secured Claim:  Shall mean any Claim that is secured by a lien on Collateral, to the extent such lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, and only to the extent of the value of the holder of the Claim's interest in such Collateral.

32.   Unsecured Claim:  Shall mean any Claim that is not a Priority Claim or a Secured Claim.

33.   Unsecured Ordinary Course Claim:  Shall mean any Unsecured Claim that is not a Deficiency Claim.

34.   Voting Record Date.  Shall mean the record date for voting on the Plan established by the order approving the Disclosure Statement.

## II.   ADMINISTRATIVE EXPENSE AND PRIORITY TAX CLAIMS

In accordance with Bankruptcy Code section 1123(a)(i), the Administrative Expense Claims and Priority Tax Claims are not designated as Classes of Claims for purposes of the Plan and are not entitled to vote on the Plan.

## A.   Administrative Expense Claims.

1.   Bar Date for Administrative Expense Claims.  The holder of an Administrative Expense Claim, other than (i) a Professional Fee Claim, (ii) a liability incurred and payable in the ordinary course of business by the Debtor (and not past due),

(iii) an Administrative Expense Claim that has been Allowed on or before the Effective Date, or (iv) a Claim subject to Bankruptcy Code section 503(b)(9), must file with the Court and serve on the Debtor or Reorganized Debtor, as applicable, notice of such Administrative Expense Claim by the later of (i) thirty (30) days after the Effective Date or (ii) thirty (30) days after the date on which an order allowing such Administrative Expense Claim becomes a Final Order. Such notice must include at a minimum (i) the name of the holder of the Claim, (ii) the amount of the Claim, and (iii) the basis of the Claim. **Failure to file and serve such notice timely and properly shall result in the Administrative Expense Claim being forever barred and discharged.**

2.     <u>Allowance of Administrative Expense Claims</u>.  An Administrative Expense Claim with respect to which notice has been properly filed and served pursuant to Section II.A.1 hereof shall become an Allowed Administrative Expense Claim if no objection is filed within thirty (30) days of the proper filing and service of such notice.  If an objection is timely filed, the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent Allowed by Final Order or settled, compromised, or otherwise resolved by the Debtor or Reorganized Debtor, as applicable.

3.     <u>Payment of Allowed Administrative Expense Claims</u>.  Except to the extent that a holder of an Allowed Administrative Expense Claim, other than a Professional Fee Claim, agrees to a less favorable treatment, each holder of an Allowed Administrative Expense Claim shall, in full satisfaction of such Allowed Administrative Expense Claim,

receive Cash equal to the amount of such Allowed Administrative Expense Claim on the later of (i) the Effective Date or (ii) thirty (30) days after the date such Administrative Expense Claim becomes Allowed.  Allowed Administrative Expense Claims not yet due and owing as of the Effective Date shall be paid by the Reorganized Debtor in the ordinary course of business.

**B.**    **Professional Fee Claims.**

All persons asserting a Professional Fee Claim: (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Effective Date and (ii) shall be paid in full in Cash in such amounts as are Allowed by the Court (a) thirty (30) days after the date upon which the order relating to any such final application becomes a Final Order or (b) upon such other terms as may be mutually agreed upon between the person asserting the Professional Fee Claim and the Debtor or Reorganized Debtor, as applicable.  **Failure to file such final application timely and properly shall result in the Professional Fee Claim being forever barred and discharged.**

**C.**    **Priority Tax Claims.**

Except to the extent that a holder of an Allowed Priority Tax Claim (i) has been paid prior to the Effective Date or (ii) agrees to different treatment, Allowed Priority Tax Claims shall bear interest at a rate of four percent (4.00%) per annum, and shall be paid in equal monthly Cash payments in an amount sufficient to pay such Allowed Priority Tax Claims and accrued interest thereon over a time period not to exceed five (5) years

after the Petition Date. The payments shall commence by the later of: (i) the first (1st)

day of the calendar month which is at least ninety (90) days after the Effective Date or

(ii) ninety (90) days after such Priority Tax Claim becomes Allowed.

## RELEASE OF PERSONAL OBLIGATIONS OF RESPONSIBLE PARTIES

**UPON THE PAYMENT OF ALL PLAN PAYMENTS TO A PRIORITY CLAIMANT, ANY CORRESPONDING PERSONAL LIABILITY ASSOCIATED WITH THE UNPAID OBLIGATIONS SHALL BE EXTINGUISHED. SUCH RELEASE SHALL ONLY BE EXTINGUISHED UPON FULL PAYMENT AS PROVIDED IN THE PLAN. DURING THE PENDENCY OF THE PLAN AND SO LONG AS THERE IS NO DEFAULT UNDER THE PLAN OR THE DEBTOR'S PAYMENTS TO A PRIORITY CLAIMANT, A PRIORITY CLAIMANT SHALL NOT TAKE ANY ADVERSE ACTION AGAINST THOSE INDIVIDUALS IT MAY CONSIDER TO BE RESPONSIBLE PARTIES WITHOUT APPROVAL OF THIS BANKRUPTCY COURT.**

### III.    CLASSIFICATION OF CLAIMS AND INTERESTS

A Claim is classified in a particular Class only to the extent that the Claim

qualifies within the description of that Class, and is classified in another Class or Classes

to the extent that any remainder of the Claim qualifies within the description of such

other Class or Classes. A Claim is classified in a particular Class only to the extent that

the Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise

satisfied before the Effective Date. A Claim which is not an Allowed Claim is not in any

Class. Notwithstanding anything to the contrary contained in the Plan, no distribution

shall be made on account of any Claim that is not an Allowed Claim. The Debtor has

designated the following Classes of Claims and Interests:

Class 1:  Secured Claim of Property Tax Lending.

Class 2:  Secured Claim of Collin County Appraisal District.

Class 3:  Secured Claim of United Central Bank.

Class 4:  Secured Claim of Maluk Dhami.

Class 5:  Deficiency Claims.

Class 6:  Unsecured Ordinary Course Claims.

Class 7:  Convenience Claims.

Class 8:  Interests.

## IV.     TREATMENT OF CLASSES

The Plan classifies and specifies the treatment of all Claims against, and Interests in, the Debtor, whether such Claims or Interests are liquidated or unliquidated, fixed or contingent, disputed or acknowledged, and whether such Claims or Interests are the subject of proofs of claim or interest.  See **Exhibit 1** for a detailed breakdown of payment terms.   The following Section describes the Classes and specifies their respective treatments.

**A.     Class 1:  Secured Claim of Property Tax Lending.**

1.     <u>Description</u>.  On February 23, 2009, pursuant to section 32.06 of the Texas Tax Code, the Debtor executed certain documents transferring a property tax lien for the tax year 2008 to Property Tax Lending.  The Debtor further executed a promissory note with respect to this property tax lien in favor of Property Tax Lending for the amount of $191,153.36.  On January 22, 2010, with the advance knowledge of the Lender, the

Debtor, pursuant to section 32.06 of the Texas Tax Code, executed certain documents transferring the property tax lien for the tax year 2009 to Property Tax Lending. The Debtor further executed a promissory note with respect to this property tax lien in favor of Property Tax Lending for the amount of $73,541.89. Taking into account payments made towards this debt, Property Tax Lending has an Allowed Secured Claim in the amount of $267,677.25, of which the entire amount is Secured. Class 1 consists of Property Tax Lending's Allowed Secured Claim.

      2.    <u>Treatment</u>. In satisfaction of its Allowed Secured Claim, Property Tax Lending shall receive in 120 equal monthly payments Cash in an aggregate amount equal to the Allowed Secured Claim, including post-Effective Date interest at a rate of twelve percent (12.00%) per annum. Subject to an exact calculation of the tax due, the monthly payment to Property Tax Lending is anticipated to be $5,174.95 during the plan period. The Class 1 Claim is impaired and entitled to vote to accept or reject the Plan.

**B.    Class 2: Secured Claim of Collin County Central Appraisal District.**

      1.    <u>Description</u>. The Collin County Central Appraisal District has an Allowed Secured Claim in the amount of $79,142.24, of which the entire amount is Secured. Class 2 consists of the Collin County Central Appraisal District's Allowed Secured Claim.

      2.    <u>Treatment</u>. In satisfaction of its Allowed Secured Claim, the Collin County Central Appraisal District shall receive in 60 equal monthly payments Cash in an aggregate amount equal to the Allowed Secured Claim, including post-Effective

Date interest at a rate of four percent (4.00%) per annum.  Subject to an exact calculation of the tax due, the monthly payment to the Collin County Central Appraisal District is anticipated to be $1,457.52 during the plan period.  The Class 2 Claim is impaired and entitled to vote to accept or reject the Plan.

**C.    Class 3: Secured Claim of United Central Bank.**

1.    <u>Description</u>.  United Central Bank has an Allowed Claim in the amount of $14,193,793.72 of which $6,503,180.51 is Secured, based upon the value of the Hotel and certain other assets of the Debtor to which United Central Bank holds a security interest in.  Class 3 consists of the Secured portion of United Central Bank's Allowed Claim.

2.    <u>Treatment</u>.  In satisfaction of its Allowed Secured Claim, United Central Bank will receive equal monthly payments based on a twenty-five (25) year amortization and a commercially reasonable interest rate of six percent (6.00%) per annum, for payments of $41,900.08 per month.  The early maturity or "balloon" of the unpaid principal balance shall be set at six (6) years from the Effective Date.  The Debtor will provide annual reports to United Central Bank documenting the yearly profit and loss of the business.  All adequate protection payments made through the Confirmation Date shall be credited against the principal balance of the outstanding debt owed to United Central Bank.  The Class 3 Claim is impaired and entitled to vote to accept or reject the Plan.

**D.   Class 4: Secured Claim of Maluk Dhami.**

1.   <u>Description</u>.   In November of 2010, the Debtor acquired certain office equipment, televisions, and a dishwasher (the "Equipment") for the Hotel by obtaining a loan from Maluk Dhami ("Dhami") for $12,000.00, and in turn executing a promissory note and security agreement for said Equipment. Dhami properly perfected his interest in the Equipment by filing a UCC Financing Statement with the Texas Secretary of State on November 8, 2010. Dhami has an Allowed Claim in the amount of $12,000.00 of which $12,000.00 is Secured, based upon the value of the Equipment.

2.   <u>Treatment</u>.   In satisfaction of its Allowed Secured Claim, Dhami shall receive in sixty (60) equal monthly payments Cash in an aggregate amount equal to the Allowed Secured Claim, including post-Effective Date interest at a rate of four percent (4.00%) per annum, for a monthly payment of $221.00. The Class 4 Claim is impaired and entitled to vote to accept or reject the Plan.

**E.   Class 5: Deficiency Claims.**

1.   <u>Description</u>.   Class 5 consists of Deficiency Claims.

2.   <u>Treatment</u>.   In satisfaction of Allowed Deficiency Claims, each holder thereof shall receive, in sixty (60) equal monthly payments, Cash in an aggregate amount equal to seven percent (7.00%) of the total Allowed Deficiency Claim. The Class 5 Claims are impaired and entitled to vote to accept or reject the Plan.

**F.   Class 6: Unsecured Ordinary Course Claims.**

1.   <u>Description</u>.   Class 6 consists of Unsecured Ordinary Course Claims.

2.    <u>Treatment</u>.  In satisfaction of Allowed Unsecured Ordinary Course Claims, each holder thereof shall receive, in sixty (60) equal monthly payments, Cash in an aggregate amount equal to seven percent (7.00%) of the total Allowed Unsecured Ordinary Course Claim.  The Class 6 Claims are impaired and entitled to vote to accept or reject the Plan.

**G.    Class 7: Convenience Claims.**

1.    <u>Description</u>.  Class 7 consists of (i) Allowed Unsecured Ordinary Course Claims against the Debtor, each Claim in an amount less than or equal to $50,000 or in an amount greater than $50,000 whereby the holder agrees to reduce its Claim to $50,000 and accept the treatment provided for in Class 7; (ii) Allowed Deficiency Claims against the Debtor, each Claim in an amount less than or equal to $50,000 whereby the holder agrees to accept the treatment provided for in Class 7; and (iii) Allowed Deficiency Claims against the Debtor, each Claim in an amount greater than $50,000 whereby the holder agrees to reduce its Claim to $50,000 and accept the treatment provided for in Class 7.

2.    <u>Treatment</u>.  In satisfaction of Class 7 Claims, each holder thereof shall receive within sixty (60) days of the Effective Date, Cash in an aggregate amount equal to seven percent (7.00%) of the total Allowed Convenience Claim.  The Class 7 Claims are impaired and entitled to vote to accept or reject the Plan.

**H.    Class 8: Interests.**

1.    <u>Description</u>.  Class 8 consists of Interests in the Debtor.

2.    <u>Treatment</u>.  Holders of Interests in the Debtor will retain such Interests. The holders of Interests in the Debtor, as the only party likely to infuse fresh capital into an insolvent entity, propose to fund the Plan in an amount equal to $105,000.00, consisting of new capital contributions to the Estate made in Cash on the Effective Date. This anticipated $105,000.00 contribution is essential to the effective reorganization of the Debtor and makes possible payments of one hundred (100%) percent of the holders of Allowed Secured Claims.  Such capital contribution will be used in establishing a capital reserve to fund any necessary improvements to the Hotel.

The contribution of $105,000.00 in new capital results in the contribution of money or money's worth to the Estate, thus satisfying the new value exception to the Absolute Priority Rule and allowing the Interest holders to retain their Interests in the Reorganized Debtor.  Class 8 is not entitled to vote to accept or reject the Plan.

## V.    MEANS OF IMPLEMENTATION OF THE PLAN

### A.    Sources of Consideration for Plan Distributions.

Revenue from the Reorganized Debtor's post-Confirmation Date business operations shall be used to (i) fund the payment of expenses and other costs of operation and (ii) fund distributions and other payments required under the Plan.  The Debtor's Cash on hand as of the Effective Date may also be used to fund distributions under the Plan.

**B.      Management of the Reorganized Debtor.**

Jagmohan Dhillon, is the managing member of the Debtor, and will be an Interest holder of the Reorganized Debtor after the Effective Date.  Mr. Dhillon will continue to serve as the managing member for the Reorganized Debtor.

Upon the Effective Date, Dhillon Management Company, LLC shall continue to be employed as the management company for the Reorganized Debtor.

**C.      Reorganized Debtor's Operations.**

The Reorganized Debtor shall continue in the same business as the Debtor.

**D.      Lien Retention.**

Each Claimant that holds a Secured Claim shall retain its lien to the extent of the Allowed amount of its Secured Claim.

**E.      Post-Confirmation Date Insurance on Collateral.**

The Reorganized Debtor shall maintain in force at all times insurance of a type and in an amount equal to the greater of the amount customary in light of the type of Collateral or the amount required in the loan documents with the secured lender United Central Bank.  Each Claimant holding a Secured Claim shall be named as an additional loss payee as its interests appear.  Should the Reorganized Debtor fail to maintain said insurance, or fail to obtain new insurance or cause existing insurance to be reinstated within fifteen (15) days after receipt of written notice of the insurance lapse, the creditor whose Collateral has become uninsured may immediately exercise any and all contract rights to force-place insurance or may immediately exercise any and all state law rights it

has as to the insurance default, including, but not limited to, repossession of its Collateral unless the Reorganized Debtor has timely cured the insurance default.

**F.    Post-Confirmation Date Maintenance of Collateral.**

At a minimum, the Reorganized Debtor shall maintain the Collateral securing each Secured Claim in the condition it is in as of the Effective Date, normal wear and tear excepted.    The Reorganized Debtor shall perform such additional maintenance and repairs as may be approved by the Claimant or Claimants holding the Secured Claim or Secured Claims.

**G.    Certain Post-Confirmation Date Taxes.**

The Reorganized Debtor shall timely pay all post-Confirmation Date taxes, if any, that would, absent payment, become a lien against Collateral.

**H.    Prepayment.**

The Reorganized Debtor may prepay any Class at any time without penalty or premium.    However, the Reorganized Debtor shall make any prepayments in the hierarchy established by Section 507 of the Bankruptcy Code, satisfying each higher Priority Claim in full, including interest, before remitting to a lower priority Claim.

**I.    Misclassified or Unclassified Claims.**

Notwithstanding the classification of Claims and Interests and the specific treatment provisions provided for in the Plan, any Claimant judicially determined to hold a Secured Claim that is not expressly classified as such shall be considered as a separate

Class for voting and distribution purposes. Such a Claimant shall, to the extent of its Secured Claim, receive treatment identical to that provided for Class 4.

**J.    Default.**

If the Reorganized Debtor fails to comply with any provision of the Plan, the Reorganized Debtor shall be in default under the Plan, and Claimants may immediately pursue their rights and remedies under state law only after providing written notice to the Reorganized Debtor of the alleged default. There shall be a five (5) day grace period for payment, then a ten (10) day cure period allowed after notice.

## VI.    DISTRIBUTIONS

**A.    Payments.**

Unless otherwise provided, the payments under the Plan on each Class of Claims shall:

    i.    be made monthly;

    ii.   commence on the first day of the first full-calendar month after the Effective Date; and

    iii.  continue on the same date of each month thereafter until all payments proposed, including accrued interest proposed, have been made.

**B.    Record Date for Distributions.**

As of the Confirmation Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtor or its respective agents shall be deemed closed, and there shall be no further changes made to reflect any new record

holders of any Claims or Interests. The Debtor shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Confirmation Date.

**C.     Delivery of Distributions in General.**

Distributions to each holder of an Allowed Claim shall be made by mail as follows: (i) at the address set forth on the proof of claim filed by the Claimant; (ii) at the address set forth in any written notice of address change delivered to the Debtor after the date of any related proof of claim; or (iii) at the address reflected in the Schedules if no proof of claim was filed and the Debtor has not received a written notice of a change of address. To the extent the Debtor has no current address for the holder of an Allowed Claim, the Reorganized Debtor shall withhold the remittance of any distribution to such holder unless and until the Reorganized Debtor is notified in writing of such holder's then-current address.

**D.     Taxes in Connection with Distributions.**

In making Cash distributions under the Plan, the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed on it by a governmental unit, and all distributions pursuant to the Plan shall be subject to all applicable withholding and reporting requirements. The Reorganized Debtor may withhold the entire Cash distribution due to any holder of an Allowed Claim until such time as the holder provides the Reorganized Debtor with the information necessary for it to comply with the applicable withholding and reporting requirements.

**E.    Undeliverable Distributions.**

If a distribution is remitted to the holder of any Allowed Claim as provided in the Plan and is returned as undeliverable, no further distribution shall be made to such holder unless and until the Reorganized Debtor is notified in writing of the holder's then-current address.   Subject to the other provisions of the Plan, undeliverable distributions shall remain in the possession of the Reorganized Debtor pursuant to this paragraph until such time as a distribution becomes deliverable.  All undeliverable Cash distributions will be held in unsegregated, interest-bearing bank accounts for the benefit of the Claimants entitled to such distributions, and those Claimants will be entitled to any interest actually earned on account of the undeliverable distributions, provided the distributions are claimed timely.

**F.    Unclaimed Undeliverable Distributions.**

Any holder of an Allowed Claim who does not assert a Claim in writing for any undeliverable distribution within two (2) years after such distribution was first made shall no longer have any claim to, or interest in, such undeliverable distribution, and shall be forever barred from receiving any distributions under the Plan, or from asserting a Claim against the Debtor, the Estate, the Reorganized Debtor, or their respective properties, and the Claim giving rise to the undeliverable distribution will be barred.  Any undeliverable distributions on Allowed Claims that are not claimed timely as provided herein will be retained by the Reorganized Debtor.

G.    **No *De Minimis* Distributions.**

Notwithstanding any other provision of this Plan, the Reorganized Debtor shall not make any Cash payment of less than five dollars ($5.00) to any Claimant. No consideration will be provided *in lieu* of the *de minimis* distributions this Section relieves the Reorganized Debtor from making.

H.    **Interest.**

Unless otherwise provided, the interest proposed on each Class of Claims shall:

       i.      be simple interest;

      ii.     begin to accrue on the Effective Date and continue to accrue until all payments proposed have been made to the Class;

    iii.    accrue only on the principal amount of the Claims in the Class; and

    iv.    be calculated on the basis of the actual number of days elapsed over a year of 365 days.

I.    **Disputed Claims.**

1.    <u>No Distribution Pending Allowance</u>.  Notwithstanding any other provision of the Plan, no Cash shall be distributed under the Plan on account of any Claim that is not Allowed, unless and until such Claim becomes an Allowed Claim. Until a Claim becomes Allowed, the Reorganized Debtor shall hold the payments to which the holder of such a Disputed Claim would have been entitled under the Plan if the Disputed Claim were an Allowed Claim in the lesser of: (i) the maximum amount asserted in the Case by the Claimant; or (ii) should the Reorganized Debtor move for a Court order estimating the Disputed Claim, the estimated amount thereof as determined by the Court, which

shall constitute the maximum recovery that the holder thereof may recover under the Plan. Disbursement of the payments so held shall be made as quickly as is practicable after the Disputed Claim becomes a Claim Allowed by a Final Order.

2.    <u>Resolution of Disputed Claims</u>.  The Debtor and, after the Effective Date, the Reorganized Debtor, shall have the right to the exclusion of all others to make and file objections to Claims and shall serve a copy of each objection upon the holder of the Claim to which the objection is made as soon as practicable, but in no event later than the latest of: (i) ninety (90) days after the Effective Date; (ii) ninety (90) days after a proof of claim with respect to the Claim has been filed; or (iii) such later date as may be fixed by the Court.  From and after the Effective Date, all objections shall be litigated to a Final Order except to the extent the Reorganized Debtor elects to withdraw any such objection or the Reorganized Debtor and the Claimant elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Disputed Claim without the necessity of Court approval.

## VII.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    General Treatment.

All executory contracts and unexpired leases to which the Debtor is a party are hereby assumed as of and subject to the occurrence of the Effective Date, except for any executory contract or unexpired lease that: (i) has been assumed or rejected pursuant to Final Order of the Court; (ii) is designated in the Plan supplement as a contract or lease to be rejected; or (iii) is the subject of a separate motion filed under Bankruptcy Code

section 365 by the Debtor prior to the Confirmation Date. No Cure Payments are owed as to any of the executory contracts and unexpired leases being assumed by the Debtor pursuant to this Plan.

**B.     Objections to Assumption or Cure Amount.**

Any person or entity that is a party to an executory contract or unexpired lease that will be assumed under the Plan, and that objects to the contemplated assumption, which may include proposed modifications to the existing contracts, must file with the Court and serve upon the Debtor's counsel, a written statement and supporting declaration stating the basis for its objection. This statement and declaration must be filed and served by the deadline to object to confirmation of the Plan. **Any entity that fails to file timely and serve such a statement and declaration will be deemed to waive any and all objections to the proposed assumption and the proposed Cure Payment.**

**C.     Rejection Claims.**

If the rejection of an executory contract or unexpired lease pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtor, or its respective properties or interests in property, unless a proof of claim is field with the Court and served upon counsel for the Debtor on or before the date that is thirty (30) days after the later of the Effective Date or the date of such rejection.

## VIII.    EFFECT OF CONFIRMATION

### A.    Vesting of Assets.

All property of the Estate, including all avoidance and other bankruptcy and non-bankruptcy causes of action, claims, and interests, is hereby expressly preserved and shall vest in the Reorganized Debtor on the Effective Date free and clear of all Claims, Disputed Claims, liens, encumbrances, and Interests, except as otherwise provided in the Plan.  By confirmation of the Plan, the Reorganized Debtor shall be deemed to have been appointed as the representative of the Estate for purposes of enforcing the causes of action, claims, and interests vesting in the Reorganized Debtor, as well as pursuing objections to Claims, motions to estimate contingent Claims, and motions for valuation of Collateral, although other parties in interest shall also have standing to pursue objections to Claims, motions to estimate contingent Claims, and motions for valuation of Collateral.

### B.    Binding Effect.

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind all current and former holders of a Claim against, or Interest in, the Debtor and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan.

## C.     Discharge of Claims and Termination of Interests.

Except as provided in the Plan, the rights afforded in and the payments and distributions to be made under the Plan shall be in exchange for and in complete satisfaction, discharge, release, termination, and cancellation of all existing debts, Claims, and Interests of any kind, nature, or description whatsoever, including any interest accrued on any Claims from and after the Petition Date, against the Debtor or any of its assets or properties to the fullest extent permitted by Bankruptcy Code section 1141. Except as provided in the Plan, upon the Effective Date, all existing Claims against and Interests in the Debtor shall be, and shall be deemed to be, discharged, terminated, and cancelled, as applicable, and all holders of Claims and Interests shall be precluded and enjoined from asserting against the Reorganized Debtor, its successors or assigns, or any of its assets or properties, any other or further Claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim, and whether or not the facts or legal bases thereof were known or existed prior to the Effective Date.

## D.     Releases by the Debtor and the Reorganized Debtor.

The request for entry of the Confirmation Order shall constitute a motion under Bankruptcy Rule 9019 to compromise claims as to the Proponents, their affiliates, parent companies, subsidiaries, members, shareholders, partners, predecessors-in-title, successors, heirs, assigns, representatives, attorneys, accountants, agents, investment

bankers, consultants, financial advisors and the officers and directors thereof, whether past or present (collectively, the "Released Parties").  Pursuant to the compromise:

AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE DEBTOR (ON BEHALF OF ITSELF AND THE ESTATE) COMPROMISES, RELEASES AND FOREVER WAIVES ALL RIGHTS OF ACTION AGAINST THE RELEASED PARTIES, AND THE DEBTOR SHALL CONCLUSIVELY BE DEEMED THE HOLDER OF ALL SUCH CLAIMS AND RIGHTS AS SOLE REPRESENTATIVE OF THE ESTATE; PROVIDED, HOWEVER, THAT THE FOREGOING AND ANY OTHER RELEASE UNDER THE PLAN SHALL NOT EFFECTUATE A RELEASE OF ANY CONTINUING OBLIGATION OF A RELEASED PARTY UNDER THE PLAN. THE RELEASES SET FORTH IN THIS PARAGRAPH AND OTHERWISE UNDER THE PLAN SHALL BE BINDING UPON AND SHALL INURE TO THE BENEFIT OF THE DEBTOR, REORGANIZED DEBTOR, AND ANY CHAPTER 7 TRUSTEE, IN THE EVENT THE CASE IS SUBSEQUENTLY CONVERTED TO CHAPTER 7.

NEITHER THIS SECTION NOR ANY OTHER PROVISION OF THE PLAN IS INTENDED, NOR SHOULD IT BE CONSTRUED, TO ALTER, MODIFY, OR PREJUDICE THE RIGHTS OF THE PROPONENTS AGAINST ANY PERSON OR ENTITY, ALL OF WHICH ARE EXPRESSLY PRESERVED.

E.    **Exculpation and Limitation of Liability.**

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, AS OF THE EFFECTIVE DATE, NEITHER THE DEBTOR, THE REORGANIZED DEBTOR, THE PROPONENTS NOR THEIR RESPECTIVE ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, RESTRUCTURING CONSULTANTS, OTHER CONSULTANTS, FINANCIAL ADVISORS, NOR ANY OF THEIR RESPECTIVE OFFICERS, DIRECTORS, REPRESENTATIVES, AGENTS, EMPLOYEES, OR ANY OTHER PERSON ACTING OR PURPORTING TO ACT ON THEIR BEHALF, WHETHER IN THE PAST OR CURRENTLY, SHALL HAVE OR INCUR ANY LIABILITY TO ANY PERSON OR ENTITY

FOR ANY ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO THE FORMULATION, NEGOTIATION, PREPARATION, DISSEMINATION, IMPLEMENTATION, ADMINISTRATION, CONFIRMATION OR CONSUMMATION OF THE PLAN, OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN OR ANY OTHER ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE RESTRUCTURING OF THE DEBTOR, PROVIDED, HOWEVER, THAT THE FOREGOING PROVISIONS SHALL HAVE NO EFFECT ON THE LIABILITY OF ANY PERSON OR ENTITY THAT RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.

F.   **Injunctive Relief Relating To Claims and Releases.**

THE CONFIRMATION ORDER WILL PERMANENTLY ENJOIN THE COMMENCEMENT OR PROSECUTION BY ANY ENTITY, WHETHER DIRECTLY, DERIVATIVELY OR OTHERWISE OF ANY CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION OR LIABILITIES RELEASED OR EXCULPATED PURSUANT TO THIS PLAN, INCLUDING CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION OR LIABILITIES RELEASED UNDER THE PLAN. THIS DOES NOT IN ANY WAY RESTRICT OR LIMIT ANY CREDITOR FROM ASSERTING CLAIMS AGAINST ANY NON-DEBTOR THIRD-PARTY, TO WHICH IT MAY OTHERWISE BE ENTITLED.

### IX.   CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

A.   **Conditions Precedent.**

The Effective Date for this Plan may not occur unless and until each of the conditions set forth below is satisfied:

     i.     a Confirmation Order, in form and substance satisfactory to the Debtor, shall have been entered by the Court and such order shall have become a Final Order;

     ii.    no request for revocation of the Confirmation Order under Bankruptcy Code section 1144 shall have been made, or, if made, shall remain pending;

     iii.   all actions and all agreements, instruments, or other documents necessary to implement the terms and provisions of the Plan are effected or executed and delivered, as applicable, in form and substance satisfactory to the Debtor; and

     iv.   all authorizations, consents, and regulatory approvals, if any, required by the Debtor in connection with the consummation of the Plan are obtained and not revoked.

**B.**    **Waiver of Conditions.**

The Debtor may, at its option, waive any of the conditions precedent to the occurrence of the Effective Date, provided, however, that the Debtor may not waive entry of the Confirmation Order or any condition the waiver of which is proscribed by law. Any such waivers shall be evidenced by a writing, signed by the waiving parties, served upon the United States Trustee, and filed with the Court.  The waiver may be a conditional one, such as to extend the time under which a condition may be satisfied.

**C.**    **Effect of Failure of Conditions.**

If the conditions precedent to the occurrence of the Effective Date have not been satisfied or waived in the manner provided above within thirty (30) days following the Confirmation Date, or such other date as subsequently set by the Debtor: (i) the Confirmation Order shall be vacated and shall, together with this Plan, be null and void

and of no further force and effect; (ii) no distributions under the Plan shall be made; (iii) the Debtor and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (iv) all the Debtor's obligations with respect to the Claims and Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor, including the right to seek an extension of the exclusive periods under Bankruptcy Code section 1121(d). Upon the occurrence of such failure, the Debtor shall file a written notification with the Court and serve it upon the United States Trustee.

## X.    RETENTION OF JURISDICTION

Following the Effective Date, and notwithstanding the entry of the Confirmation Order, the Court shall retain jurisdiction of the Case and all matters arising in, or related to, the Case to the fullest extent permitted by law, including jurisdiction to:

    i.    hear and determine motions, applications, adversary proceedings, and contested matters pending or commenced after the Effective Date;

    ii.    hear and determine objections (whether filed before or after the Effective Date) to, or requests for estimation of, any Claim, and to enter any order requiring the filing of proof of any Claim before a particular date;

    iii.    ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

iv.   enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

v.   To construe and to take any action to enforce the Plan or the Confirmation Order;

vi.   issue such orders as may be necessary for the implementation, execution and consummation of the Plan and to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order;

vii.   enter such orders or judgments, including injunctions, as necessary to enforce the title, rights, and powers of the Debtor;

viii.   hear and determine any and all motions, applications or adversary proceedings brought by or against the Debtor;

ix.   enter and implement orders or take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, transfers of property or property rights, or other obligations contained in the Plan and the Confirmation Order;

x.   hear and determine any applications to modify the Plan, to cure any defect or omission or to reconcile any inconsistency in the Plan, the Disclosure Statement or in any order of the Court including, without limitation, the Confirmation Order;

xi.   hear and determine all applications for administrative Claims;

xii.   hear and determine other issues presented or arising under the Plan, including disputes among holders of Claims and arising under agreements, documents or instruments executed in connection with the Plan;

xiii.   determine such other matters and for such other purposes as may be provided in the Confirmation Order;

xiv.    hear and determine all questions and disputes regarding title to the assets of the Debtor;

xv.    hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code; and

xvi.    hear and determine any action concerning the recovery and liquidation of assets, wherever located, including without limitation litigation to liquidate and recover assets that consist of claims, rights and causes of action against third parties and actions seeking declaratory relief with respect to issues relating to or affecting assets.

If the Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction, over any matter arising under, arising in, or related to the Case, including with respect to the matters set forth above in the Plan, such abstention shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

## XI.    MISCELLANEOUS

### A.    Rules of Interpretation.

1.    <u>Rules of Interpretation</u>.  Unless otherwise specified, all article, section, schedule, or exhibit references in the Plan are to the respective article of, section in, or schedule or exhibit to the Plan, as the same may be amended, waived, or modified from time to time.  The rules of construction contained in Bankruptcy Code section 102 shall apply to the Plan.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.  Whenever the words "include," "includes," or

"including" are used in the Plan, they are deemed to be followed by the words "without limitation."

2.    <u>Number and Gender</u>.    Unless the context requires otherwise, words denoting one gender shall include the other gender, words denoting the neuter shall include the male and female, words denoting the singular shall include the plural, words denoting the conjunctive shall include the disjunctive, and vice versa.

3.    <u>Headings</u>.    The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meaning of the text.

4.    <u>Calculation of Time</u>.    In computing any period of time prescribed or allowed, the provisions of Bankruptcy Rule 9006(a) shall apply.

**B.    Revocation or Withdrawal of Plan.**

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.    If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.    In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Interests by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

**C.    Modification of Plan.**

The Plan may be modified pre- and post-confirmation as provided in Bankruptcy Code section 1127.

**D.    Payment of Statutory Fees.**

The Reorganized Debtor shall be responsible for the timely payment of disbursement fees incurred pursuant to 28 U.S.C. § 1930(a)(6).  After the Confirmation Date, the Reorganized Debtor shall file with the Court and serve on the United States Trustee a quarterly financial report for each month or portion thereof while the Case remains open.  The quarterly financial reports shall be in a format prescribed by the United States Trustee.  Any payment made by the Proponents, the Debtor, the Debtor in Possession, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with, the Case, or in connection with the Plan and incident to the Case, has been approved by, or shall be subject to the approval of, the Court as reasonable.  Costs and expenses incurred after the Confirmation Date shall not be considered as costs and expenses in, or in connection with, the Case, or in connection with the Plan and incident to the Case, and therefore shall not be subject to Court approval.

**E.    Setoff, Recoupment and Other Rights.**

Notwithstanding anything to the contrary contained in the Plan, the Reorganized Debtor may, but shall not be required to, setoff, recoup, assert counterclaims or withhold against the distributions to be made pursuant to this Plan on account of any Allowed Claim, any claims that the Debtor, the Estate, or the Reorganized Debtor may have against the entity holding the Allowed Claim; provided, however, that none of the failure to effect such a setoff or recoupment, the failure to assert counterclaims or withhold

distributions, or the allowance of any Claim against the Debtor, the Estate, or the Reorganized Debtor, or any partial or full payment during the Case or after the Effective Date in respect of any Allowed Claim, shall constitute a waiver or release by the Debtor, the Estate, or the Reorganized Debtor of any claim that any of them may possess against such holder.

**F.     Special Tax Provisions.**

In accordance with Bankruptcy Code section 1146(a), neither the issuance, transfer nor exchange of a security, nor the delivery of an instrument or transfer under the Plan, shall be taxed under any law imposing a stamp or similar tax.

**G.     Expedited Determination of Taxes.**

The Reorganized Debtor may request an expedited determination of taxes of the Reorganized Debtor under Bankruptcy Code section 505(b) for all returns filed, or on behalf of, the Reorganized Debtor for all taxable periods (or portions thereof) ending after the Petition Date through and including the Effective Date.

**H.     Substantial Consummation.**

On the Effective Date, the Plan shall be deemed to be substantially consummated under Bankruptcy Code sections 1101 and 1127(b).

**I.     Cram Down.**

If one or more impaired Classes votes to reject the Plan, the Proponents intend to request that the Court confirm the Plan in accordance with Bankruptcy Code section 1129(b). Should the Court determine that the Plan as proposed is not subject to

confirmation by cram down under Bankruptcy Code section 1129(b), the Proponents reserve the right to modify the Plan.

**J.     No Admission Against Interest.**

Until the Effective Date, neither the filing of this Plan, any statement made or provision contained in it, nor any action taken by any Claimant or Interest holder with respect to this Plan shall be or shall be construed to be: (i) an admission against interest; (ii) a waiver of any rights that any Claimant or Interest holder may have against the Debtor or any of its properties; or (iii) a waiver of any rights that any Claimant or Interest holder may have against any other Claimant or Interest holder.  Until the Effective Date, all such rights are specifically reserved.  Likewise, the Proponents' categorization and proposed treatment of Claims and Interests shall not constitute an admission concerning the validity, extent, enforceability, or priority of any Claim or Interest.

**K.     Voting of Claims.**

Each holder of an Allowed Claim or Interest in an impaired Class of Claims or Interests as of the Voting Record Date that is entitled to vote on the Plan shall be entitled to vote separately to accept or reject the Plan, as provided in the order approving the Disclosure Statement.

**L.     Governing Law.**

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance

with, the laws of the State of Oklahoma, without giving effect to the principles of conflict of laws thereof.

**M.     Severability.**

If the Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void, or unenforceable, the Court shall, with the consent of the Debtor, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

DATED:  November 4, 2011.

PARKWOOD HOSPITALITY, LLC

By: _____
Jagmohan Dhillon, its Managing
Member

Respectfully submitted,

PHILLIPS MURRAH P.C.


/s/ Robert J. Haupt
Robert J. Haupt, OBA No. 18940
Andrew R. Chilson, OBA No. 30040
Clayton D. Ketter, OBA No. 30611
Corporate Tower, Thirteenth Floor
101 North Robinson Avenue
Oklahoma City, Oklahoma  73102
405.235.4100 – telephone
405.235.4133 – facsimile
rjhaupt@phillipsmurrah.com
archilson@phillipsmurrah.com
cdketter@phillipsmurrah.com
ATTORNEYS FOR DEBTOR

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2011, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Charles S. Glidewell
*Assistant U.S. Trustee*

Judy Hamilton Morse
William H. Hoch, III
*Attorneys for United Central Bank*

Jack S. Dawson
*Attorney for City of Frisco*

Jay G. Israel
*Attorney for Holiday Hospitality Franchising Inc.*

I further certify that on November 4, 2011, a true and correct copy of the above and foregoing was served via U.S. Mail, postage prepaid to the attached matrix and the following:

Jason A. Starks
Assistant Attorney General
Bankruptcy & Collections Division
P.O. Box 12548
Austin, Texas 78711-2548
*Attorney for the Texas Comptroller of Public Accounts*

Leib M Lerner
Alston & Bird LLP
333 S Hope St. 16th Floor
Los Angeles, CA 90071
*Attorney for Holiday Hospitality Franchising Inc.*

/s/ Robert J. Haupt